UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN S. CABERNOCH, as Mother and Next Friend of WILLIAM CABERNOCH, JR., a Minor,<br><br>Plaintiff,<br><br>v.<br><br>UNION LABOR LIFE INSURANCE COMPANY,<br><br>Defendant. | No. 06 C 1515<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

Plaintiff was awarded summary judgment on her claim for her son's death benefit. Plaintiff now moves for attorneys' fees and costs and prejudgment interest. For the following reasons, Plaintiff's Motion for Attorneys' Fees and Expenses is denied, and her Motion for Prejudgment Interest is granted in part.

### II. Attorneys' FEES AND EXPENSES

Plaintiff now moves for attorneys' fees and costs. Pursuant to 29 U.S.C. § 1132(g)(1) it is within the court's discretion to award reasonable attorneys' fees and costs to either party to an ERISA benefit employee action. The Seventh Circuit has recognized two tests for determining whether an award of attorneys' fees to a prevailing party is appropriate. *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998). The first test requires the examination of five factors: "(1) the degree of the offending party's culpability or bad faith; (2) the degree of the offending party's ability to satisfy an award of attorneys' fees; (3) the degree to which such an

award would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on all the plan members; and (5) the relative merits of the parties' positions." *Id.* The second test examines whether the losing party's position was "substantially justified." *Id.* (citation omitted). Underlying both tests is the same question: "was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Id.* (citation omitted). Plaintiff does not qualify for attorneys' fees under either test, therefore, her motion is denied.

Plaintiff argues that this court's grant of summary judgment, fundamental fairness, and the protection of beneficiaries all require an award of fees. However, in this case, Defendant was neither acting in bad faith, nor out to harass Plaintiff. Although this court did grant Plaintiff's motion for summary judgment, Defendant's arguments were not without merit. I denied the parties' initial cross-motions for summary judgment, noting that there were issues of fact as to the decedent's intoxication and the proximate cause of his death. I allowed the parties additional time to conduct further discovery as to these questions. Defendant's position did indeed have merit and was taken in good faith. There is no evidence that Defendant was simply out to harass Plaintiff. Furthermore, due to the unique set of facts involved in this case, there is little support for Plaintiff's assertion that deterrence would be served or that plan members would greatly benefit from an award of fees here. For the foregoing reasons, Plaintiff's Motion for Attorneys' Fees and Costs is denied.

**III. PREJUDGMENT INTEREST**

    **A. Availability**

In *Fritcher v. Health Care Service Corp.*, the Seventh Circuit confirmed that prejudgment interest is "presumptively available to victims of federal law violations[,]" in order to completely compensate the plaintiff, and that this presumption applies in ERISA cases. 301 F.3d 811, 820 (7th Cir. 2002) (citations omitted). Although "compound prejudgment interest is the norm in federal litigation[,]" the presence of countervailing considerations may render an interest award inappropriate. *American Nat. Fire Ins. Co. v. Yellow Freight Systems, Inc.*, 325 F.3d 924, 938 & n.11 (7th Cir. 2003). One example of such a situation is where the prevailing party has caused "unreasonable delay," thus artificially delaying a judgment. *Id.* at n.11. Under such circumstances it may be within the court's discretion to deny some or all prejudgment interest. *Id.*

Plaintiff moves for an award of prejudgment interest, at a rate of 6.14% (the monthly average prime over 64 months, from the time of death until judgment was entered) plus a .35% premium to cover the risk of default, to be compounded monthly, totaling $61,500.00. Alternatively, Plaintiff argues that pursuant to 215 ILCS 5/357.9, the court should award prejudgment interest at a rate of 9% to be compounded annually, totaling $71,999.96. Defendant argues that Plaintiff in this case did cause unreasonable delay in the litigation, justifying a denial of prejudgment interest. For the following reasons, Plaintiff's motion is granted in part.

According to Defendant, the first indication of Plaintiff's slow pace manifested when she waited nearly four months to file her death claim. It was nearly fifteen months after the final claim denial that Plaintiff filed suit. The case was originally filed in state court, and then

removed to this court by Defendants. Once in federal court, Plaintiff amended her complaint three times, once to address the ERISA issues involved, and another time to add indispensable parties to the complaint. Defendant argues that Plaintiff was responsible for some 33 months of delay. Furthermore, Defendant was not acting in bad faith, another consideration in determining whether prejudgment interest should be awarded. *See Trustmark v. Univ. of Chicago Hosp.*, 207 F.3d 876, 885 (7th Cir. 2000).

Although Plaintiff may have waited four months to file her death claim, it took two months for Defendant to administer and deny the claim and another three months to review the claim denial on appeal. Had Plaintiff received the benefit at the end of the two-month processing period (when her claim was initially denied), she would have had the benefit of any interest earned. Defendant is not responsible for prejudgment interest during the four-month period before the death benefit was filed, nor in the two-month processing period up to the initial denial. However, Defendant is responsible for prejudgment interest in the six-month period between the initial denial and final denial, from June 2004 through November 2004.

Once the final denial was issued, Plaintiff waited fifteen months to file suit. Defendant argues that this is an unreasonable delay, and Plaintiff provides no justification for it. Although Plaintiff presumably needed time to look for an attorney, the initial complaint contains little more than the fact of the death and the procedural history of the claim denial. Little factual investigation was required for the filing of the declaratory judgment action, and it is difficult to see how a fifteen-month delay was reasonable here. Defendant should not be required to pay prejudgment interest during this period. *See Crystal Semiconductor Corp. v. TriTech Microelectronics International, Inc.*, 246 F.3d 1336, 1362 (Fed. Cir. 2001) (upholding the district

4

court's denial of prejudgment interest where the plaintiff's two-year delay in filing suit against the defendant caused the damages owed by the defendant to escalate); *see also Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1298 (7th Cir. 1987) ("Substantial, unexplained delay in filing suit might be[ ]a reason [for denial of prejudgment interest], because delay shifts the investment risk to the defendant, allowing the plaintiff to recover interest without bearing the corresponding risk.")

Once the suit was filed, there were no unreasonable delays caused by Plaintiff. The first and second amended complaints were filed twenty-one days apart and Plaintiff's third amended complaint, filed in response to Defendant's motion to dismiss, was filed forty-five days after the motion to dismiss. None of these filings was unreasonably delayed. For the period beginning with the filing of the suit and ending when judgment was entered for Plaintiff, February 2006 through March 2009, there is no need to deviate from the rule that prejudgment interest be awarded.

I agree that Defendant was not acting in bad faith during the course of the litigation, however, bad faith is not the sole consideration in determining whether to award prejudgment interest. Prejudgment interest serves both the federal policies of deterrence and compensation, and "[w]ithout it, compensation of the plaintiff is incomplete. . ." *Gorenstein Enterprises, Inc. v. Quality Care- USA, Inc.*, 874 F.2d 431, 436, 439 (7th Cir. 1989); *see also West Virginia v. United States*, 479 U.S. 305, 310-11 (1987) ("[p]rejudgment interest is an element of complete compensation.").

**B. Interest Rate**

The Seventh Circuit has suggested that the prime rate be used in calculating prejudgment interest, but also warned against using rates that were too low in the face of a risk of default. *Fritcher*, 301 F.3d at 820. Here, the Plaintiff urges that the base rate be the monthly average prime for the months where interest is due. Defendant argues that the court should use the prime rate in effect as of the date of this court's judgment. However, Defendant relies on *Nickola v. Group Life Assurance, Co.*, where the parties failed to address the proper rate of prejudgment interest. Here, Plaintiff has addressed the issue, and I am persuaded by her argument, especially since one of the purposes of prejudgment interest is to compensate Plaintiff fully. Using the average prime for the months Plaintiff went without what was owed her (or in this case, her grandson) will more fully compensate her than using the rate the day of judgment. *See Cement Division v. City of Milwaukee*, 144 F.3d 1111, 1114 (7th Cir. 1998) (awarding "interest at the market rate, which means an average of the prime rate for the years in question."); *see also In the Matter of Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978*, 954 F.2d 1279, 1332-33 (7th Cir. 1992) (noting that "it should be plain that the market rate in question is the one during the litigation-when the defendant had the use of money that the court has decided belongs to the plaintiff-not the going rate at the end of the case."). In this case, the monthly average prime for June 2004 through November 2004 is 4.49%. The average prime for February 2006 through March 2009 is 6.73%.

Plaintiff also claims that the court should include a small premium to account for the risk of default, however, I decline to do so. Plaintiff has offered no evidence that Defendant has a higher-than-average risk of default to warrant the addition of a premium.

6

**C. Compounding**

Plaintiff argues that any awarded interest should be compounded monthly. Defendant maintains that the court should not compound any interest due. The Seventh Circuit has noted that "compound interest ought to be the *norm* in federal matters," absent any special circumstances. *Amer. Nat. Fire Ins. Co.* v. *Yellow Freight Sys., Inc.*, 325 F.3d 924, 938 (7th Cir. 2003) (emphasis in original). Defendant argues that Plaintiff's delays throughout the litigation preclude the compounding of interest. However, Defendant is not responsible for prejudgment interest during the period between the final denial of the claim and the filing of the suit, the only period of unreasonable delay. Neither is Defendant responsible during this period for the compounding of the interest awarded for June 2004 to November 2004. In this case, there are no special circumstances militating against compounding interest.

The question then becomes how often should interest be compounded. In support of her position that interest should be compounded monthly, Plaintiff points to *Juszynski v. Life Insurance. Co. of North America*, where the court awarded the plaintiff insured prejudgment interest compounded monthly after plaintiff prevailed on his ERISA claim against the defendant long-term disability insurer, seeking reinstatement of his monthly benefit. No. 06 CV 5503, 2008 WL 877977, at *15 (N.D. Ill. March 28, 2008). The court offered little reasoning as to why monthly compounding was appropriate, and there appears to be little guidance from the Seventh Circuit on the matter. However, during the time of the litigation, Plaintiff was deprived of the use of her money, and Defendant profited, either by investing the money and earning interest on interest, or using it in lieu of loans upon which it would have had to pay interest. Because monthly compounding of interest is standard on everything from mortgages to credit cards to car

7

loans, such compounding is appropriate here. By compounding the interest at a lesser frequency, Defendants would be profiting from their wrong and Plaintiff would not be compensated fully for the lost value of her money in the marketplace.

**D. Calculation of Award**

The appropriate formula for compounding interest monthly is

Principal + Interest = Current Principal x $(1 + r)^n$

where r is the interest rate at the time of compounding and n is the number of months.

There is no dispute among the parties as to the monthly average prime rates. First, I must calculate the prejudgment interest for June 2004 through November 2004, the six-month period between the initial denial and final denial. The average monthly rate for this period is 4.49%. The interest at each compounding time is 4.49% ÷ 12 or 0.374167% (0.00374167 in decimal form). The calculation for this period is 150,000 x $(1 + 0.00374167)^6$ = 153,399, and the prejudgment interest for this period is $3,399.

Next I must calculate the prejudgment interest for February 2006 through March 2009, the period between when the suit was filed and when judgment was entered for Plaintiff. The average monthly rate for this period is 6.73%. The interest at each compounding time is 6.73% ÷ 12 or 0.560833% (0.00560833 in decimal form). The calculation for this period is 153,399 x $(1 + 0.00560833)^{38}$ = 189,723, and the prejudgment interest for this period is $36,324.

The total prejudgment interest awarded to Plaintiff is $39,723.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's Motion for Attorneys' Fees and Costs is denied, and her Motion for an Award of Prejudgment interest is granted in part in the amount of $39,723.

ENTER:

James B. Zagel
United States District Judge

DATE: August 14, 2009